# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| GARY LEE WILLIAMS, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CAUSE NO. 3:11-CV-7 |
| ) | |
| DR. RACHELL ROSS, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment, filed by Rachel Ross, M.D on May 1, 2012. For the reasons set forth below, the Court **GRANTS** the motion for summary judgment.

BACKGROUND

Plaintiff, Gary Williams ("Williams"), a prisoner currently confined at the Pendleton Correctional Facility, filed a complaint pursuant to 42 U.S.C. section 1983, alleging violations of his Federally protected rights while he was confined at the Westville Correctional Facility ("WCF"). The complaint named Indiana Department of Correction Commissioner Edwin Buss and Dr. Rachell Ross, M.D. as defendants. This Court screened the complaint pursuant to 28 U.S.C. § 1915A, allowed the Plaintiff to proceed against Dr. Ross on his Eighth Amendment claim that she denied him medical attention for a serious medical need and on his claim that she retaliated against him for complaining about medical care. The Court dismissed Commissioner Buss and all other claims.

SUMMARY JUDGMENT STANDARD

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406 (7th Cir. 2009). According to Rule 56:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c). Furthermore, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials – including the facts considered

undisputed – show that the movant is entitled to it…" Fed. R. Civ. P. 56(e)(2),(3). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (citing *Anderson*, 477 U.S. at 248).

Where a party bears the burden of proof on a particular issue, the party may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine dispute requiring a trial. *See Beard v. Whitley Cnty. REMC*, 840 F.2d 405, 410 (7th Cir. 1988); *Hickey v. A.E. Stanley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate. In this situation, there can be "no genuine dispute as to any material fact" because a complete failure of proof concerning an essential element of the nonmovant's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 323.

DISCUSSION

Williams alleges that he has a serious long term medical problem with his lower back and that he had been on vicodin to control the resulting pain. He also states that in retaliation for filing a grievance about being given a dirty catheter Dr. Ross took him off his pain medication, leaving him in pain.

3

A violation of the Eighth Amendment's cruel and unusual punishments clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's actual state of mind was one of "deliberate indifference" to the deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The Eighth Amendment requires the government "to provide medical care for those whom it is punishing by incarceration." *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996) (*cert. denied,* 519 U.S. 1126 (1997) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). In medical cases, the Eighth Amendment test is expressed in terms of whether the defendant was deliberately indifferent to the plaintiff's serious medical needs. *Williams v. Liefer*, 491 F.3d 710, 714 (7th Cir. 2007); *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). A medical need is "serious" for Eighth Amendment purposes if it is either one that a physician has diagnosed as mandating treatment, or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention, and if untreated could result in further significant injury or unnecessary pain, and that significantly affects the person's daily activities or features chronic and substantial pain. *Gutierrez v. Peters,* 111 F.3d at 1373.

Deliberate indifference is comparable to criminal recklessness and is shown by "something approaching a total unconcern for [the prisoner's] welfare in the face of serious risks, or a conscious,

4

culpable refusal to prevent harm." *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992) (Citations omitted). "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. at 837.

Prison officials may not retaliate against an inmate for exercising his First Amendment rights, even if their actions would not independently violate the Constitution. *See Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000). To prove retaliation, a prisoner must first show that he was engaged in a Constitutionally protected activity and second, that engaging in that activity was a substantial or motivating factor in the defendant's actions against him. *See Mt. Healthy City School District v. Doyle*, 429 U.S. 274, 287 (1977).

In support of her motion for summary judgment, Dr. Ross submits her own affidavit, extensive medical records from the WCF, and medical records from Wishard Hospital in Indianapolis, Indiana. The Plaintiff has not responded to Defendant Ross's motion for summary judgment.

Dr. Ross's submissions establish that Williams arrived at the Westville Correctional Facility on July 9, 2010 (DE 41-4 at 1-4, DE 41-2 ¶ 4). Prior to arriving at the WCF, Williams had been treated for chronic low back pain and had been evaluated for possible surgery at Wishard Hospital (DE 41-2 ¶ 4). Upon his arrival at the WCF, Williams was enrolled in the Chronic Care Clinic (DE 41-2 ¶

5

3). Dr. Ross was one of the primary care physicians at the WCF, and treated Williams for his medical conditions (DE 41-2 ¶ 2).

Williams's medical records establish that after his arrival at the WCF he was seen on numerous occasions by Dr. Ross and other medical personnel and received extensive treatment for his medical problems (DE 41-3 through 41-7). Dr. Ross examined Mr. Williams on October 22, 2010, (DE 41-3 at 24-26; 41-2 ¶ 6), and noted that tests that the neurologist recommended were completed, so she referred him back to the neurosurgeon for possible surgery (DE 41-3 at 24-5, DE 41-4 at 26-28).

On November 9, 2010, Williams submitted a request for health care asserting continuing pain in his lower back (DE 41-4 at 30), and he was seen on sick call on November 12, 2010 (*Id*. at 31-33). Williams requested Vicodin three times a day rather than two (*Id.*). On November 18, 2010, Williams submitted a health care request asking for different pain medication (*Id*. at 34). On November 23 and November 25, 2010, Williams submitted healthcare requests asking why he had not been sent back to Wishard Hospital (*Id*. at 39-40). Dr. Ross states in her affidavit that she had no control over when Wishard Hospital scheduled Williams to see the neurosurgeon; she also stated that, because Williams did not have an urgent medical need for back surgery, his surgery could safely wait until Wishard Hospital scheduled the appointment (DE 41-2 ¶ 6).

On November 24, 2010, Williams was seen in nursing sick call for urinary retention and a nurse gave him a straight catheter to

help him void (*Id*. at 37-38). On November 26, 2010, Williams was seen in nursing sick call and received an intramuscular injection of Toradol for his back pain (*Id*. at 41-42 and 123). Williams received another Toradol injection on November 27, 2010 (*Id.* at 123). On November 30, 2010, Williams submitted a healthcare request asserting worsening back symptoms and, in response, medical staff informed him that he was scheduled to see the doctor (*Id.* at 43).

Dr. Ross's submissions establish that Williams was afforded extensive care for his medical conditions while he was under her care at the Westville Correctional Facility, including medication for his continuing back pain. Dr. Ross states that in mid-November 2010 she did change Williams's pain medication from Vicoden to Naproxen, a non-narcotic pain medication because she "thought it best to take Mr. Williams off Vicodin prior to surgery so his body could adjust to functioning without narcotic pain medication" (DE 41-2 ¶ 7).

Williams asserts that Dr. Ross discontinued his Vicoden because he filed a grievance against her on an unrelated medical matter. But in her affidavit Dr. Ross states that her "decision to discontinue Mr. Williams' Vicoden had nothing to do with any grievances he filed against me or his behavior . . . [rather she] . . . discontinued Vicodin because Mr. Williams was scheduled to see the neurosurgeon and likely to have back surgery and I knew he would not receive Vicodin after surgery and [she] thought it best to take him off Vicodin so his body could adjust to not having narcotics" (DE 41-2 ¶ 7).

7

Because the Defendant met her initial obligation under Fed. R. Civ. P. 56, the burden shifts to the Plaintiff to come forth with evidence sufficient to allow a factfinder to decide in his favor the questions of whether Dr. Ross retaliated against him and was deliberately indifferent to his serious medical needs. Although the Defendant provided the Plaintiff with an extensive warning, as required by *Kincaid v. Vail,* 969 F.2d 594 (7th Cir. 1992), *Timms v. Frank*, 953 F.2d 281 (7th Cir. 1992) *cert. denied,* 504 U.S. 957 (1992), and *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir. 1982), of the consequences of not submitting an affidavit stating facts opposing her dispositive motion (DE 39), Williams has not responded to her summary judgment motion. Accordingly, the Court must accept the Defendant's uncontested sworn statements of fact as true.

The evidence before the Court establishes that Dr. Ross's decision to cancel Williams's Vicodin did not leave him without pain medication. Rather, she prescribed another pain medication to replace the Vicodin. Accordingly, Williams was not left without pain medication, and nothing in the record before this court suggests that Dr. Ross was deliberately indifferent to Williams's serious medical needs under the standards of *Estelle v. Gamble*, 429 U.S. at 103.

Williams alleged that Dr. Ross discontinued his Vicoden because he had filed a grievance against her on an unrelated medical matter. But Dr. Ross's uncontested affidavit establishes that her decision to replace the Vicoden prescription was not a

response to a grievances Williams filed. Rather, she replaced his Vicodin prescription with another pain medication because of his upcoming surgery. Dr. Ross's sworn statement is sufficient to rebut the Plaintiff's claim of retaliation, and the unrebutted facts presented by Dr. Ross establish that she did not retaliate against Williams but instead made a medical decision based on his upcoming surgery.

Because Williams has not come forward with evidence from which a reasonable jury could conclude that Dr. Ross retaliated against him or that she was deliberately indifferent to his serious medical needs, Dr. Ross is entitled to summary judgment.

CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant Ross's motion for summary judgment (DE 38), and **DIRECTS** the Clerk to enter judgment in favor of Dr. Rachell Ross and against the Plaintiff.

**DATED: June 26, 2012**          /S/RUDY LOZANO, Judge
                                  **United States District Court**